May it please the court, Marissa Conroy on behalf of the appellant, Fredy Gomez. In this case, your honors, Mr. Gomez pled guilty to six counts of harboring or concealing illegal aliens for financial gain, and the district court imposed a number of enhancements that were in error. I'd like to begin by addressing the unaccompanied minor enhancement the district court imposed. The enhancement under 2L1.1B4 applies when a minor, which is defined as someone that has not yet attained the age of 16, is traveling without a parent or grandparent. And here in this case, there were actually two brothers that were eventually discovered in one of the stash houses, and they were ages 13 and 15. They were actually traveling with an adult cousin of theirs. With an adult what? Cousin. Okay. The district court ultimately concluded that based on the scale of this smuggling operation, the size of it, that it would be reasonably foreseeable to Mr. Gomez that an unaccompanied minor would be traveling. And the district court's conclusion is essentially legally and factually incorrect. First off, that standard applied by the district court was essentially really one of strict liability when the correct test under 1B1.1 is one of reasonable foreseeability. Now the district court presumed that because of the number of aliens that were brought through in this organization, it would be reasonably foreseeable. The problem is, is the government offered specific evidence to refute the district court's conclusions. One being that the government was very intimately familiar with this particular smuggling organization as well as others out there, and brought to the district court's attention there are many organizations which specialize in smuggling children or smuggling children from orphanages to the United States. Mr. Gomez was not a member of one of those organizations. This was not an organization that specialized in children. They also brought to the district court's attention that in the POYO books, which linked Mr. Gomez's name to about 142 of the aliens, none of those individuals were unaccompanied minors. And finally, there was evidence that of the 6,000, there was no evidence presented that there was ever other than these two individuals and unaccompanied minor traveling. So essentially, based on the facts presented to the district court, its conclusion was contrary to what the government had presented. There was simply no evidence that it would be reasonably foreseeable to Mr. Gomez that unaccompanied minors would be brought through this organization. The district court judge relied on the juvenile statements themselves too, didn't he? I mean, is that not allowable? Absolutely. The trial attorney stipulated, look, we agree that there were two minors and they were unaccompanied by a parent or grandparent. In the briefing, it seemed like what we were trying to convey was that just because of the sheer numbers, it was almost like a per se application, and I don't think the record supports that. It looks like the district court judge evaluated a number of facts in making the determination of whether or not there should be an upward or enhancement for unaccompanied minors. Well, I think the district court's facts were in error, though, because they were contrary to the evidence presented by the government. So essentially, the district court relied on the size of it, which I'm saying really there's no evidence other than these two individuals that there were unaccompanied minors ever smuggled through of the 6,000 people. So that does not make it reasonably foreseeable to Mr. Gomez. The other component, there were essentially basically two holdings to the district court's position, was that the district court took notice of the fact that it thought the minors, based on their pictures, appeared to be minors, and that Mr. Gomez was present at this stash house location, and therefore he should have known that these individuals were minors and were unaccompanied. But again, that argument is also a non-starter, because essentially the government itself said that they did not know immediately that these were minors. Secondly, as I mentioned previously, they were minors traveling with an adult cousin, and that's not disputed at any point in the record. So was it really reasonably foreseeable to Mr. Gomez, who's in this house with a number of adults and these two minors, that he's not going to know that they're traveling without their parent or grandparent, based on the requirements for the enhancement? And so that... Foreseeable applies to what point in time? When did he have to recognize? At the point at which he joined this criminal activity, this jointly undertaking criminal activity. And so Mr. Gomez's role in this particular offense was he was the individual that would go lease the stash houses and then check into the stash houses to essentially kind of check in, oversee them, and then pay the rent for these stash houses to the people that own them, as well as to collect fees when people were released. Government... What was the government's argument in the district court? They were arguing against these enhancements at that point, weren't they? That is correct. Both parties were jointly arguing against the imposition. And did they make the argument you're just making? Yes, they did. There was no evidence of foreseeability? That's correct. That is in their sentencing memorandum. Now the other argument I'd like to address... I'm sorry. I just want to make sure I understand. It was pursuant to the plea agreement that the government agreed that they would not seek any enhancements. Is that correct? Enhancements, adjustments, or departures. Correct. I assume anything the government represented was correct, however. Absolutely. At least they believed it to be correct. Absolutely. And they spent a number of hours interviewing Mr. Gomez after his plea and prior to his sentencing and learned additional information from him about this smuggling operation, and they believed his testimony to be truthful as well, just not helpful to the point of a departure. Now the other adjustment applied by the court was an adjustment for being a manager or supervisor, an aggravating role adjustment. And essentially the government in its response brief and the district court at the time of sentencing erred by confusing the management of assets with the management of people. As I stated before, Mr. Gomez's role was essentially limited to procuring stash houses, paying rent on those homes, and collecting payments from the individual alien sponsors before their release. This does not fall under the definition under 3B1.1 of an aggravating role. That is asset management and does not warrant an adjustment as made clear by the comments to 3B1.1. Well, there was evidence in the record, wasn't there, that Mr. Gomez-Reyes had control over at least the guards at the Compton house? Not necessarily. What the district court found was it said that it relied on the reports of investigation, which are in the sealed excerpt of record, as the basis for its finding that Mr. Gomez had control over the guards. And that was based on the statement of the aliens. But at the time of sentencing, the government pointed out to the district court and said, look, we understand why the district court can maybe see why the aliens said that Mr. Gomez had control over the guards or they perceived that he had control over the guards. But based on our investigation, the government's investigation, that is not the case. And that's at ER 235. So essentially you have the district court relying on the alien's perception, but you have the government stepping up and saying, look, based on our investigation, that is not the case. That's not true. He did not have a supervisory role over the guards. He was just a midline employee in this organization, played no managing role, played no lower level role, and therefore the aggravating rule enhancement was not appropriate. Okay. Just so I understand your argument, the government's argument that you can rely on his being a property manager is wrong. Correct. What they had to show was that if the defendant was the organizer, leader, manager, or supervisor of one or more other participants, and you're saying there's no evidence of that. That's correct. I'm saying the district court relied on the statements of the aliens to make that conclusion, but the government raised the point to the district court. We understand why the aliens may have perceived that, but here's our evidence, our factual investigation, and that is simply not the case. Okay. And then finally the last thing I would note for the court while we're requesting that the sentence essentially be vacated and remanded was there was much conflict and dispute over what occurred in regards to the alleged sexual assaults. And although the district court appears to take a position, essentially there are a number of positions it takes. It adopts both aliens, ICG and HTC, their accounts of what happened. It adopts Mr. Gomez's version of what happened. It then modifies Mr. Gomez's version of what happened and says, okay, I find that you did take this alien to the hotel, but it was never consensual, or I find you did take this alien to the hotel, but you could never have consent in this situation because it's a coercive environment, and the district court relied on some outside research of Alice Hill, neither of which the parties had as a basis of the record. But essentially the district court used those assaults as part of a basis for imposing the role enhancement, the coercion or hostage-taking enhancement, and then as a 3553. Where does it use it as? Well, I mean, in the end he says that because it couldn't have been a voluntary act in light of the control that these aliens perceived Mr. Gomez-Reyes to have. I mean, can't that be credited? And that is a possible basis for him to consider in whether or not the sentence was substantively reasonable. I think what I'm trying to say is there were so many disputed versions woven into the district court's imposition of the enhancements that the district court needed to resolve it and stick with one. But he did say, he said, okay, I'm going to accept your version that it didn't happen at the house, it happened at a hotel. But he also adopted the district court's version of the aliens by overruling the defense attorney's objections and saying, I overrule it and it's tirely, I find it sufficiently reliable. And that version was it happened at a house. It seemed to me that he was trying to figure out exactly what happened. He listened to both sides. And he said, well, okay, the event really did happen. The question whether it was consensual or not, I'm crediting you, Mr. Gomez-Reyes, that it happened under the way you said, but there's no way that I can say that it was voluntary in light of the power and control that you exerted. And I just don't know how that is, we could say that that was an abuse of his discretion or unreasonable or somehow resulted in a substantively unreasonable sentence. Well, I think the problem is he credited both versions. He credited the aliens' accounts and he credited Mr. Gomez' accounts. And so, really. For purposes of the enhancement and the sentencing, he did exactly as Judge Murillo said. He said even if it did happen in the house and she went there, I mean at the hotel, the situation is inherently coercive. So I'm going to find it non-consensual. But by crediting his version, he's discrediting hers. He's not. He's assuming after he's already rejected it. But I'll assume for purposes of sentencing that I accept your version that it happened at the hotel. But I don't care whether it happened at the hotel. It was coercive. I think that. The coercive component, though, was based on his research of Alice Hill, which was never presented to any of the parties, and then he makes this conclusion. And so I think the whole scenario where we're going back and forth. We're well over time. I would just request an evidentiary hearing to resolve the issue. Thank you. Good morning, Your Honors. May it please the Court. Carrie O'Neill on behalf of the United States. Your Honors, the true issue before the Court is whether the District Court clearly erred in its determination of the facts, and it did not. The facts here, in essence, were largely undisputed. The question that then arises is, were the set of facts reasonably foreseeable to the defendant in terms, for example, of the unaccompanied minor adjustment?  under the clearly erroneous standard of review. Likewise, the role enhancement is reviewed by this Court under the clearly erroneous standard of review. What did the government tell the District Court about the unaccompanied minors issue? Why did it say it should not be, there should be no enhancement for that? It's my understanding that the It's not a question of understanding. What did the government tell the District Court? The record reflects that the government told the District Court it was not reasonably foreseeable to this defendant that he would know that there would be unaccompanied minors in the Compton location. The government did tell the District Court that this smuggling ring of which defendant was a part did not specialize in children and did not, for example, take children out of orphanages. Now, at the same time, there are other facts in the record that show that defendant admitted to in his plea agreement this was a large smuggling ring. Over three years, it smuggled 6,000 Is that all the government said? That's correct. This is not a group that specializes in children? That's correct, Your Honor. Therefore, it's not reasonably foreseeable? And it used the large numbers, as defense counsel pointed out. It is true that in the Pollo ledger books of the 142 alien names attributable to defendant, none were minors. The government pointed that out to the District Court. But that really actually goes to direct knowledge as opposed to reasonable foreseeability. And the government isn't arguing now or then that he had direct knowledge. And the government now, by the terms of its plea agreement, is allowed to defend the District Court's determination. And the District Court's determination of the facts is not clearly erroneous. The government wasn't obliged to oppose the enhancement in the District Court, was it? It was just required not to support it. That is correct, Your Honor. But it went beyond that and it opposed it. It did, Your Honor. And did it have any sound basis for doing that? Your Honor, I can't speak to that. I wasn't the underlying prosecutor. I think in terms of negotiating the plea agreement, there are all sorts of prosecutorial discretion and management decisions that go into that. I don't think anything that the government said at the time of the District Court hearing precludes this Court from finding that the District Court did not clearly err. There is evidence in the record that this was a large ring. There is evidence in the record that at the one location where the defendant was most present, the Compton House location, there were two unaccompanied minors, unaccompanied by a parent or grandparent. There was also a clear finding by the District Court at ER 54 that there was an absence of any evidence in the record that there was some system put in place to make sure unaccompanied minors would not be smuggled. Moreover, the fact that the ring didn't specialize in children is almost neither here nor there because we did have... It's neither here nor there? Why did the government argue that to the District Court as a reason not to do it if it's neither here nor there? I don't know why, Your Honor. But I think the District Court, based on the... You don't support what the government told the District Court. I think it's true that this ring did not specialize in children. I don't dispute that today. It's neither here nor there. Well, the reason why... But it was the government's argument to the District Court. True. But the reason why I say that is because the other facts in the record show clearly unaccompanied minor children at the location with which defendant was most familiar, no system in place to prevent unaccompanied minors from being smuggled. In fact, defense counsel at ER 63 even made the concession to the District Court that it was foreseeable that in a smuggling operation of this scale, minors would be smuggled. Sure it was. I do agree with that. So he conceded A. He wouldn't concede B, which was that unaccompanied minors would be smuggled. That position seems somewhat illogical. But there is on the record, in the record, sufficient facts for this Court to find the District Court did not clearly err in its reasonable foreseeability analysis, even if it's different from what the government argued at that time. Yeah, it bothers me. I understand, Your Honor. Yes. Well, I hope the government would understand that it bothers me. I know you're free. You're not free to book down in the District Court to ask for something. Correct. You're not required to oppose it. You oppose it on one theory, and then you come to the Court of Appeals and you present the opposite theory. That bothers me. I don't know what it bothers anybody else. But I would hope it would bother the government. It's an uncomfortable situation to be in. But I think, based on the facts in the record, this Court's standard of review, clearly erroneous with an overlay of abusive discretion, it is the government's position, and perhaps these adjustments were close calls. It's the government's position that we should overrule the government's position. It's the government's position that you should affirm the District Court, because his ruling... And in so doing, overrule the government's position and say it was wrong in the District Court. It's not whether... Not only was the District Court... But we should tell, say the District Court was right and the government was wrong. Well, I don't think that's technically correct. I think what this Court would be doing... Technically always bothers me. You know, whenever there's a constitutional argument... I'm curious to see why it's technically correct. Because what this Court has to decide under Hinkson and cases like Hinkson is whether or not the District Court's application of all three of these adjustments was illogical, implausible, or without support in the record. The arguments that the government made derive from essentially the same large set of facts here that are undisputed. The government made arguments below that the District Court firmly disagreed with. And to me, it is very difficult to say that the District Court's analysis of those facts was illogical, implausible, or without support in inferences that may be drawn from facts in the record. And that's a quote from Hinkson. It is an uncomfortable position to be in, Your Honor. And it's not a position that any prosecutor likes to be in. But we have to look at what are the clear facts that were before the District Court, what were the arguments made, and then did the District Court err? Did he make a clear mistake in determining the set of facts? He did not. There is no dispute these were unaccompanied minors. There is no dispute defendant was most present at this Compton location. There is no dispute that there was no evidence by defendant or anybody else that this was a ring that had put into place a series of preventative measures to prevent unaccompanied minors. And so on that basis, I think this Court can affirm the District Court... Do you have a case that says you have to put into effect some procedures to make sure you don't bring... Well, the government cited in its brief to United States v. Rodriguez, which is an unpublished disposition out of the Fifth Circuit from 2013 with very similar facts, where the defendant there was... the plus-two adjustment was applied to him, where his co-conspirators harbored undisputed unaccompanied minors, and there was an absence of evidence that this ring had any sort of preventative measures put into place. So the government relies on that Fifth Circuit case. In regards to the role enhancement, again, as an initial matter under this Court's precedent in United States v. Maldonado, that is something this Court reviews for clear error. The government, in its answering brief, misstated the analysis by focusing on Note 2, but what I will point out is that the PSR properly stated the analysis for the District Court, that you look to whether or not this defendant supervised one or more guard, and then you look to the other factors in Note 4 as to whether or not this was an organizer or leader. And that is what the District Court did at the time of the hearing, and you can see that at ER 55. Here, the PSR and the Court were clear that the defendant directed at least one guard, and was in charge of finding and organizing drivers, in other words, recruiting accomplices, that the defendant obtained and rented the stash houses, that goes to his participation in the scheme, and the Court then applied a Plus 2 adjustment. Defense counsel points out that at ER 25, the government somehow told the District Court to ignore the alien's perceptions of the defendant being a guard, but that's not explicitly what the government said. The government said, my understanding is what this defendant did, and what the investigation reveals that this defendant did, he would rent the houses, he would come to the houses to check up periodically, and in that sense, he oversaw the guards. I do think he was at a higher level than the guards. I think the defendant would admit that he was at a higher level than the guards. So the representation about ER 235 put forth here today is somewhat inaccurate. There is clear evidence in the record that the defendant oversaw at least one guard, and that is sufficient to support the Plus 2 adjustment that the District Court applied. There's further argument in their brief that the District Court somehow erred because it didn't engage in an on-the-record comparative analysis. It's the government's position that for that Plus 2 enhancement, no such comparative analysis was needed because he supervised one or more guards. Moreover, to the degree that there is some comparative analysis required under Rojas Millon, which actually examined 3B1.2, which sort of in the structure of 3B1.2 has more of a requirement of looking at relative culpability, here the District Court applied the lowest level. District Court Judge Pragerson, when he looked at related defendant Sanchez-Lopez, applied a Plus 3, and that was reflective, and the government pointed that out to Judge Otero in this sentencing proceeding. Judge Pragerson applied a Plus 3 because Sanchez-Lopez had more discretion in his ability to greenlight, and presumably if the elusive Honda, who defendant relies on, was ever caught, then a Plus 4 would have been applied to him. But as an initial matter, there doesn't need to be an examination of relative culpability here. He supervised more than one guard. He recruited drivers. He organized them. Even the government told the District Court he was at a higher level than the actual stash house guards. All right, thank you. You're more than a minute over. Thank you, Your Honor. We'll give you a minute also. Just briefly in response to the concept of an operating system being in place, I think the fact that there were 6,000 aliens smuggled, only two of which were unaccompanied minors, reflects the fact that there probably was, and the inference can be made, there was an operating system in place, that this was not an organization that smuggled unaccompanied minors, and therefore it was not reasonably foreseeable. Thank you. Thank you, counsel. Next case to argue will be submitted.
judges: REINHARDT, FISHER, MURGUIA